

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| DALE L. GERANEN, | * | CIV 10-1003 |
| Plaintiff, | * | |
| -vs- | * | ORDER AND OPINION REMANDING SOCIAL SECURITY APPEAL |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of defendant's final decision denying plaintiff's claims for social security disability ("SSD") and supplemental security income ("SSI") benefits. This matter was referred to United States Magistrate Judge William D. Gerdes for the purposes of conducting any necessary hearing and issuing a report and recommendation.

The magistrate filed his Report and Recommendation on February 9, 2011. Copies of such Report and Recommendation were served upon the parties as required by 28 U.S.C. § 636. Plaintiff filed objections on February 18, 2011. I have conducted a *de novo* review as required by 28 U.S.C. § 636(b)(1)(C) of those portions of the Report and Recommendation to which objection is made.

The Administrative Law Judge ("ALJ") found that plaintiff is not disabled under the definitions set forth in the Social Security Act.

> The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," so long as the impairment lasts for at least twelve consecutive months. 42 U.S.C. § 1382c(a)(3)(A). The claimant must be unable to do his previous work and, given his age, education, and work experience, cannot perform any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Hurd v. Astrue, 621 F.3d 734, 737-38 (8th Cir. 2010).

The Administrative Law Judge ("ALJ") performed the required five-step sequential evaluation to determine:

> (1) whether the claimant is presently engaged in a "substantial gainful activity;"
> (2) whether the claimant has a severe impairment – one that significantly limits the claimant's physical or mental ability to perform basic work activities;
> (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience);
> (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and
> (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Cox v. Apfel, 160 F.3d 1203, 1206 (8th Cir. 1998); 20 C.F.R. § 404.1520 (SSD rules) and § 416.920 (SSI rules). "The claimant has the burden of proof to show []he is disabled through step four; at step five, the burden shifts to the Commissioner to show there are other available jobs in the economy." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). This Court reviews the Social Security Commissioner's final decision only to ensure that the ALJ applied the correct legal standards and that the factual findings are supported by substantial evidence in the record as a whole. Hensley v. Barnhart, 352 F.3d 353, 355 (8th Cir.2003).

At **step (1)** the ALJ determined that plaintiff was not currently engaged in substantial gainful activity. Plaintiff did not object to this determination

At **step (2)**, the ALJ determined that plaintiff had a severe impairment - "a longstanding experience of seizures . . . requiring emergency room treatment or hospitalization when . . . medications were at non-therapeutic blood levels." Plaintiff objects to the ALJ's failure to consider evidence of his knee impairment or develop the record in that regard.

"'[S]ocial security hearings are non-adversarial,' and an ALJ has a duty to fully develop the record, even when the claimant is represented by an attorney." Johnson v. Astrue, 627 F.3d 316, 319 (8th Cir. 2010) (*quoting Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir.2004)). "Where

the ALJ fails to fully develop the record, this court may remand for the taking of further evidence." Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002). Where there is not enough evidence in the record to determine whether plaintiff has a particular impairment and, if so, whether it was disabling, the Commissioner is authorized to obtain a consultive evaluation. *See* 20 C.F.R. § 404.1517. "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994).

The ALJ noted that the knee impairment was never raised until after the evidentiary hearing. The records received after the evidentiary hearing and reviewed by the ALJ showed that plaintiff had a left knee injury followed by surgery in 2003. The ALJ noted, however, that there was no medical evidence in the record that the knee continued to be a problem for the plaintiff after 2003 and the plaintiff performed substantial gainful activity at the heavy exertional level after the surgery until the time he claimed he became disabled as a result of seizures. The ALJ did receive and consider medical reports relating to a 2003 knee injury and surgery but concluded that there was no medically determinable knee impairment and that any claim of ongoing knee impairment was inconsistent with the record and should be given no weight.

This is not a case where the treating physician's records do not give sufficient medical evidence to determine whether plaintiff is disabled as a result of a 2003 knee injury. In this cases, there is no evidence of an impairment arising out of the knee injury and no record to develop in that regard. I find it relevant that neither plaintiff nor his lawyer obtained any evidence to support a current knee impairment. *See* Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993). "[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). Plaintiff has made no such showing and I therefore find that the ALJ did not err in failing to further supplement the record as suggested by plaintiff.

Plaintiff objects to the ALJ's rejection of a neuropsychological evaluation in determining that he did not have a neuropsychological condition. Following the hearing before the ALJ, plaintiff obtained a neuropsychological evaluation from Dr. James A. Dickerson, a licensed psychologist who has had extensive training and experience in completing disability

3

examinations. Dr. Dickerson reviewed plaintiff's records, performed tests, recited the results, related those test results to the diagnostic criteria for determining disability, concluded that plaintiff meets the criteria for an organic mental disorder, and opined that plaintiff could not perform the job of janitor or custodian as suggested by the vocational expert who testified at the hearing.

The ALJ discussed plaintiff's memory and intellectual functioning. The ALJ rejected Dr. Dickerson's diagnosis of an organic mental disorder because (1) Dr. Dickerson claimed an onset date of 1998 which was not supported by the evidence, (2) he allegedly minimized the effect of plaintiff's alcohol use or abuse, (3) the plaintiff's objective test scores were not consistent with the degree of functional limitation ascribed by the treating physician, (4), he did not administer an IQ test which is the preferred test for determining the presence of an organic mental disorder, (5) his diagnosis of an organic mental disorder was based on the premise that plaintiff had been experiencing epilepsy, a contention the ALJ rejected, and (7) his characterization of plaintiff's restrictions was inconsistent with plaintiff's own recitation of his daily activities in the application.

Dr. Dickerson was not a treating physician and therefore his medical opinion is not accorded controlling weight. 20 C.F.R. § 404.1527(d). He did examine the plaintiff and specializes in the field of mental disabilities and therefore his opinion is entitled to more weight than someone who has not examined the plaintiff. Id. Although a medical source opinion that a plaintiff is disabled may be rejected, an opinion from a medical source that an impairment meets or equals one of the criteria for an impairment should be considered, although the final determination at the administrative level is left to the Commissioner. 20 C.F.R. 404.157(e).

The ALJ completely rejected any claim that plaintiff's epilepsy medication has had an adverse impact on the plaintiff's memory or intellectual abilities. While the ALJ's opinion is rife with references to plaintiff's alcohol use or abuse, there is no medical opinion in the file that his neurological limitations were caused by alcohol abuse. While the ALJ is free to reject a consulting physician's opinion, he cannot substitute his own medical opinions for those of a physician. Finch v. Astrue, 547 F.3d 933, 938 (8th Cir. 2008). The ALJ may reject the opinion of a medical expert where it is inconsistent with the medical record as a whole. Id. The ALJ did

4

not find that Dr. Dickerson's opinion was inconsistent with any medical records. He simply concluded that the doctor had failed to consider certain information and failed to perform a certain test. "An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir.2005)." Johnson v. Astrue, 627 F.3d 316, 319-20 (8th Cir. 2010). The ALJ failed to do so in this case. The determination of the ALJ that plaintiff does not have a disabling mental or memory problem is not supported by substantial evidence in the record as a whole.

At **Step (3)**, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.

Plaintiff objects to the extent to which the ALJ substituted his own judgment for that of the treating physician in determining that he did not have epilepsy. The law is well established as to the weight to be accorded the opinions of treating physicians.

> Generally, an ALJ is obliged to give controlling weight to a treating physician's medical opinions that are supported by the record. *See Randolph v. Barnhart*, 386 F.3d 835, 839 (8th Cir.2004); 20 C.F.R. § 404.1527(d)(2). A medical source opinion that an applicant is "disabled" or "unable to work," however, involves an issue reserved for the Commissioner and therefore is not the type of "medical opinion" to which the Commissioner gives controlling weight. *See Stormo*, 377 F.3d at 806 ("[T]reating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed, because they are merely opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner." (internal marks omitted)); 20 C.F.R. § 404.1527(e)(1). Further, although medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(2). Thus, to the extent that the ALJ discredited [the treating physician's] conclusion that [plaintiff] could not work, he rightly did so.
>
> The Commissioner defers to a treating physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. 404.1527(a)(2). "A treating physician's opinion is due 'controlling weight' if that opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in the record.' " *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir.2001) (*quoting Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (2000)).

Ellis v. Barnhart, 392 F.3d 988, 994-95 (8th Cir. 2005).

> " '[A] treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.' " *Goff*, 421 F.3d at 790 (*quoting Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005) (internal marks omitted)). "'A treating physician's opinion does not automatically control, since the record must be evaluated as a whole.' " *Id.* (*quoting Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir.1995) (internal marks omitted)). "An ALJ may 'discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Id.* (*quoting Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir.2000)).

Medhaug v. Astrue, 578 F.3d 805, 815 (8th Cir. 2009).

> "[T]he hearing examiner need not adopt the opinion of a physician on the ultimate issue of a claimant's ability to engage in substantial gainful employment." *Qualls v. Apfel*, 158 F.3d 425, 428 (8th Cir.1998) (internal quotations and citations omitted). Likewise, while a treating physician's opinion is generally entitled to "substantial weight," such an opinion does not "automatically control" because the hearing examiner must evaluate the record as a whole. *Wilson v. Apfel*, 172 F.3d 539, 542 (8th Cir.1999). "It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir.2000). "Moreover, an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Id.* at 1014 (internal quotations and citations omitted).
>
> "When one-time consultants dispute a treating physician's opinion, the ALJ must resolve the conflict between those opinions." *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir.2000). "As a general matter, the report of a consulting physician who examined a claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Id.* (internal quotations and citations omitted). This court, however, has recognized two exceptions to this general rule:

> We have upheld an ALJ's decision to discount or even disregard the opinion of a treating physician (1) where other medical assessments are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.
>
> *Id.* (internal quotations, alterations, and citations omitted).

Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007).

The records in the file show that Dr. Ruth Lim treated plaintiff for "his longstanding history of seizure disorder."

Plaintiff contacted his treating physician on July 18, 2007, reporting increased seizure activity, some of which were witnessed by his wife. Only July 29, 2007, his family brought him to the hospital because he had a seizure the night before and had fallen out of bed. Each time he was seen for his seizure disorder, the medical notes show that he suffered weakness, was unsteady, and complained of memory loss as a result of the seizures. He complained of lethargy and unsteadiness as a result of the medications prescribed for the seizures. It is clear from the medical records that his blood levels were repeatedly tested and his medication doses adjusted in an attempt to control the seizures or the side effects or both.

On August 7, 2007, plaintiff was seen by a neurologist who concluded that plaintiff's seizures were not being well controlled by medication. On August 8, 2007, an MRI report showed no evidence of abnormality to account for plaintiff's seizures. The ALJ relied upon this report to conclude that plaintiff did not suffer from a seizure disorder.

On August 15, 2007, upon inquiry from the plaintiff, the neurologist stated he could return to work on Monday, August 20, 2007.

On September 17, 2007, plaintiff's wife witnessed two seizures. Plaintiff was taken to the emergency room of a local hospital. On September 21, 2007, plaintiff's treating physician restricted him from work until further notice. Plaintiff's wife states that plaintiff was asked to resign from employment on September 10, 2007, due to his ongoing seizures. The ALJ concluded that plaintiff had lost employment before his doctor restricted him from working, and thus his seizure disorder was not the cause of plaintiff's inability to work.

Plaintiff contacted his treating physician on February 27, 2008, inquiring when he could return to work so that he could afford the treatment for his seizures. Plaintiff told his doctor that

he had not been receiving followup care due to his financial condition caused by his inability to work. The treating physician determined that plaintiff continued to suffer from a seizure disorder which was uncontrolled.

In May, 2008, plaintiff again consulted his treating physician inquiring when he could return to work. She again adjusted his medications in an attempt to control the seizures.

On June 7, 2008, plaintiff was seen in a local hospital after experiencing three seizures. He was transferred to Sanford Hospital in Sioux Falls. He was released the next day with instructions not to drive and "physical activity as can be tolerated."

On March 5, 2009, plaintiff was again seen by his treating physician for followup. Plaintiff complained of continuing seizures but did not report them because he could not afford to pay for medical care. He was receiving assistance paying for the anti-seizure medication. His treating physician noted that he had been treated with anti-seizure medications which were adjusted when levels were non-therapeutic but concluded that he continues to have seizures despite therapeutic levels of medication. She noted that increased levels of medication cause an unwanted side effect of drowsiness and affect his alertness. She noted that his inability to work had adversely impacted his financial ability to treat with a neurologist for his condition. As of March 5, 2009, she deemed it unsafe to release him for work or driving because of his uncontrolled seizure disorder.

Despite the foregoing, the ALJ determined that there was no objective evidence that plaintiff was experiencing epilepsy. The ALJ rejected plaintiff's claims of continuing seizures as not credible. The ALJ instead relied upon the August 8, 2008, MRI which found no objective explanation for the seizures and the ALJ concluded based thereon that plaintiff did not in fact have seizures.

The ALJ reviewed medical records showing anti-seizure medication levels and made his own determination that plaintiff was not credible when he stated that he was in fact taking his medications in an attempt to control the seizures. The ALJ also unilaterally determined that plaintiff's alcohol use or abuse affected the blood levels of plaintiff's anti-seizure medication and thus contributed to his seizures. There is no medical evidence in the record to support that conclusion. The ALJ concluded that, "due to blood levels being therapeutic, no incidence of any

8

witnessed seizure since June 2008, . . . the undersigned concludes the claimant is not experiencing uncontrolled seizures which preclude the performance of work activity."

"An impairment which can be controlled by treatment or medication is not considered disabling." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir.2002). However, there is no medical evidence in the record that the plaintiff's seizure disorder is controlled. The ALJ failed to inquire of any physician whether the claimed alcohol use would affect seizure activity, whether there were any objective findings of alcohol abuse, and whether seizures could occur despite therapeutic blood levels of anti-seizure medication.

> While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required "to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo [v. Barnhart]*, 377 F.3d [801,] 806 [(8th Cir.2004)]. The Commissioner's regulations explain that contacting a treating physician is necessary only if the doctor's records are "inadequate for us to determine whether [the claimant is] disabled" such as "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e), 416.912(e).

Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir.2005). The records in this case do not address the conclusion reached by the ALJ that plaintiff is not disabled due to his seizure disorder.

There is no substantial evidence in the record as a whole to support the ALJ's conclusion that plaintiff's seizure disorder was controlled and therefore not disabling. As set forth previously, there is no substantial evidence in the record as a whole to support the ALJ's rejection of a medical opinion that plaintiff's seizures or side effects from anti-seizure medication affect plaintiff's memory or intellectual functioning. Therefore, the ALJ's opinion at step 3 that plaintiff does not have an impairment or combination of impairments that meets or equals a presumptively disabling impairment listed in the regulations is not supported by substantial evidence in the record as a whole.

The ALJ's conclusions at steps 4 and 5 need not be addressed because they were based upon conclusions that I have found are not supported by substantial evidence.

The Secretary has adopted regulations which provide for the consideration of a claim upon remand.

> When a Federal court remands a case to the Commissioner for further consideration, the Appeals Council, acting on behalf of the Commissioner, may make a decision, or it may remand the case to an administrative law judge with instructions to take action and issue a decision or return the case to the Appeals Council with a recommended decision.

20 CFR § 404.983 (SSD regulations) and 20 CFR § 416.1483 (SSI regulations).

> The Appeals Council will either make a new, independent decision based on the entire record that will be the final decision of the Commissioner after remand or remand the case to an administrative law judge for further proceedings.

20 CFR § 404.984 (SSD regulations) and 20 CFR § 416.1484 (SSI regulations). The Commissioner may or may not elect to have the Appeals Council review the record instead of the ALJ. The Commissioner should be directed however to properly conduct a step (2) and step (3) analysis and, if necessary, make additional findings at steps (4) and (5), as set forth above.

Based upon the record herein,

IT IS ORDERED as follows:

1. The report and recommendation of the magistrate, Doc. 21, is rejected.

2. The plaintiff's objections to the report and recommendation, Doc. 22, are sustained.

3. The Commissioner's decision in this matter is reversed pursuant to sentence four of 42 U.S.C. § 405(g).

4. This matter is remanded to the Commissioner to comply with the directions as set forth above.

Dated this 7th day of April, 2011.

BY THE COURT:

*Charles B. Kornmann*
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *Barbara Jaeger*
         DEPUTY
(SEAL)